## LIBBY & BLOUIN, LTD., Petitioner, *v.* COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket No. 7416.    Decided September 22, 1926.

Expenditures *held* to be ordinary and necessary expenses.

*Isom J. Guillory, Esq.,* and *E. Barrett Prettyman, Esq.,* for the petitioner.

*M. N. Fisher, Esq.,* for the respondent.

This is an appeal from the determination of a deficiency in income and profits taxes for 1918 and 1919, in the amount of $11,895.25. The deficiency is based upon the action of the Commissioner in disallowing expenditures during the years involved as a deduction as ordinary and necessary expenses and in treating them as capital expenditures.

### FINDINGS OF FACT.

The taxpayer is a Louisiana corporation having its principal place of business at Lefourche Crossing. It is engaged in the business of growing and manufacturing sugar.

During 1918 and 1919 the taxpayer made the following expenditures which it charged to expense and deducted from its gross income in computing its net taxable income, which deductions were disallowed by the Commissioner:

1918

| | |
|---|---|
| Copper tubes for double effects in sugar factory | $12,147.88 |
| Boiler tubes for locomotive | 189.14 |
| Car wheels for cane cars | 408.00 |
| Expenditures on railroad tank | 291.85 |
| Supplies for harness | 194.94 |
| 112 feet of hoisting chain | 47.60 |
| Corrugated roofing | 346.32 |
| | 13,625.73 |

1919

| | |
|---|---|
| Car wheels for cane cars | $567.00 |
| Supplies for harness | 31.42 |
| Expenditures on railroad | 489.56 |
| Thermometers for sugar makers | 94.08 |
| | 1,182.06 |

The copper tubes were a part of a sugar evaporator in which cane juice is boiled in the sugar-making process. The evaporators are a species of cylindrical vertical boilers or vats, constructed of cast iron, into which the cane juice is introduced for boiling and concentration into thick juice, or syrup, from which sugar is produced.

There are different kinds of evaporators in use in the making of sugar. They are sometimes single, double, triple, quadruple or multiple, and are called single effect, double effect, multiple effect, as the case may be. The evaporators used by the taxpayer were what are known as double effects. They were 9 feet in diameter and capable of evaporating cane juice from about one thousand tons of cane every 24 hours.

In the evaporator used by the taxpayer there were about 2,400 copper tubes, each about 2 inches in diameter and 4 feet long. They stood vertically in the evaporator and were expanded at each end into an upper and lower tube. They were far enough apart to permit the introduction of steam or vapors between and among them. The steam or vapors which boils the juice is contained between the upper and lower tube sheets which are fastened horizontally at the edges to the sides of the evaporator. The cane juice is contained in the tubes. In the center of the tube sheets there is a downtake, about 24 or 30 inches in diameter, through which the juice flows from the upper to the lower part of the evaporator as it boils.

The steam contained between the tube sheets of the first effect heats the juice in that effect and as the juice boils it forms vapors which are introduced into the second effect between the tube sheets of that effect, and it is these vapors that heat the juice contained in the tubes, downtake and the rest of the second effect.

In the first effect steam comes in contact with the outer surface of the tubes and the boiling cane juice comes in contact with the inside surface of the tubes. In the second effect the vapors from the boiling juice of the first effect come in contact with the outside of the tubes.

Cane juice contains ammonia and mineral salt and about 1 to 1½ per cent acid. In the manufacture of white sugar by the sulphuration process, which was the process used by the taxpayer, the cane juice is treated in sulphur and lime tanks before being conveyed into the evaporators. Sulphur is burned in an oven and the fumes which

arise from it are introduced into the juice to acidulate it. As much sulphur is put in the juice as it will take in order to make high grade white sugar. The taxpayer manufactured a superior quality of white sugar and in order to do this used a larger quantity of sulphur than is ordinarily used. After the cane juice has been treated with sulphur, lime is introduced into it in order that, when it is subsequently heated, the lime will coagulate the albumenoids, so that in the process of settling they will fall to the bottom and the juice will remain on top.

From the sulphur and lime tanks the cane juice is introduced into the first evaporator and copper tubes. When it is boiled it contains acid, ammonia and salts. Fumes arising from the sulphur and lime produce a corrosive scale on the inside surface of the tubes in the first effect, and in the second effect the tubes are likewise attacked on the inside by the boiling cane juice and on the outside by the vapors. This causes the tubes to become thinner and they have to be renewed from time to time.

There are two methods of removing the scales. One is by a mechanical process with a brush or tube scraper. Another is by boiling them with a strong solution of caustic soda and afterwards with muriatic or hydrochloric acid. The taxpayer used the latter process.

It is impossible to determine accurately the life of the tubes in the double effect. In general they last from two to four years, depending upon the amount of sulphur used. The more sulphur that is used the shorter the life of the tubes. They do not all wear out at the same time. Some are affected to a greater extent than others and as a consequence some deteriorate faster than others even when the same amount of sulphur is used. A certain number of tubes have to be renewed each year. Sometimes a smaller number and sometimes a larger number have to be changed—and sometimes they all have to be changed. The taxpayer in this case replaced some tubes every year and in 1918 it replaced them all. After 1918 all of the tubes were changed within two or three years.

The life of the double effect evaporator is approximately twenty years. The renewal of the copper tubes which constitute a part of the double effect does not prolong the life of the evaporator, nor does it add to the original value thereof. The tubes used by the taxpayer during the taxable year involved were not in the nature of additions but were replacements of tubes worn out.

It is the standard accounting practice in the sugar-manufacturing industry to charge the cost of replacing old copper tubes with new tubes to current repairs on profit and loss and not to capitalize them. It would be difficult, if not impossible, to keep a record of the acqui-

sition, cost, life, depreciation and scrap value of each particular tube. The taxpayer charged to expense expenditures made during the year for the purpose of replacing the copper tubes.

For the years 1918 and 1919 the Commissioner allowed the taxpayer a deduction on account of the exhaustion, wear and tear of its sugar factory and machinery on the basis of a cost or March 1, 1913, value of $214,859.68.

During 1918 the taxpayer expended $189.14 to replace leaky boiler tubes on a five-ton railroad locomotive used for hauling cane to the factory. Not all of the tubes of the locomotive were changed but only those that were leaky.

There was expended by the taxpayer in 1918, $408 to replace broken car wheels on 126 cane cars used in hauling cane. Each cane car has four or eight wheels. There were no additions to the equipment. During 1919, $567 was expended by the taxpayer for the same purpose.

During 1918, $291.85 was expended by the taxpayer to repair a water tank used in connection with the railroad in replacing the bottom and patching up the tank.

During 1918, $194.94, and during 1919, $31.42 was expended by the taxpayer in the purchase of leather from time to time to repair harness for about 100 mule teams.

During 1918, $47.60 was expended by the taxpayer for 112 feet of hoisting chain. This was a part of a large apparatus called an American hoist grab which picks up about one and a half or two tons of cane at a time.

During 1918 the taxpayer expended $346.32 for corrugated roofing which was used for patching the roofs of dwellings and cabins on the plantation and around the factory. The taxpayer had buildings which cost $36,629.54 on the plantation in addition to the factory buildings.

During 1919, $94.08 was expended by the taxpayer for thermometers which were used in testing cane juice.

OPINION.

TRAMMELL: The question presented is whether the expenditures made by the taxpayer during the years involved were capital expenditures or expenses which should be deducted by the taxpayer as ordinary and necessary expense in carrying on its trade or business.

There is oftentimes a fine distinction between what is a captial expenditure and an ordinary and necessary business expense. Some items are clearly capital and other items are clearly expense, but between the two extremes a point is approached at which it is difficult to determine whether the expenditure is capital or an expense.

An item, which might be classified as a capital expenditure under certain circumstances, may, under different facts and circumstances, be considered expense. Repairs in the nature of replacements which appreciably prolong the life of the property and arrest deterioration, or acquisitions by a taxpayer which are additions to the plant or facilities, may be classed as capital expense, whereas, incidental repairs which neither materially add to the value of the property nor appreciably prolong its life but merely keep it in an ordinary, efficient operating condition, might be classified as expense items.

This, however, is not an invariable rule and the particular circumstances of the case must be taken into consideration in determining into which class the expenditures fall. In this case the tubes which were purchased by the taxpayer and used in repairing the evaporators were small parts of a large machine. They were short-lived; that is, they had to be replaced every two or three years. The tubes merely kept the evaporator in an ordinary, efficient working condition. They were not additions which added anything to the value of the machine, except such value as was added by the fact that the machine was kept in an efficient condition. There were about 2,400 of these small tubes in the evaporator. They were not in any sense separate units but were mere parts of one machine.

Expenditures for small parts of a large machine, in order to keep that machine in an efficient working condition, under the facts of this case, are, in our opinion, ordinary and necessary expenses and are not capital expenditures. The machine as a whole was repaired by replacing the worn out parts, while the parts when they were acquired as a part of the machine were, of course, a part of the capital acquisition. The replacing of the small parts as they wear out, under such circumstances, is properly expense. When a building is erected the flooring, nails and other small supplies of course enter into the capital cost of the building, yet when a building is repaired, the cost of replacing planks in the floor, and the cost of nails in making repairs, while it might be a considerable item, is entirely different from the ordinary cost of such things when the building is being erected. As in the case of the locomotive involved in this appeal, expenditures to replace certain worn out parts, as worn out tubes, broken parts, wheels, etc., merely keep the machine in operating condition. The statute contemplates that assets used in a trade or business are to be kept in an efficient operating condition by repairs, and money expended in making such repairs is considered an expense and allowed as a deduction by the statute. A different situation might result if the taxpayer had acquired a large number of tubes for the purpose of making repairs in the

future and had kept large quantities of supplies on hand, but the taxpayer did not do that in this case. The expenditures were for repairs which were actually made during the taxable years.

From a consideration of all the evidence, we are of the opinion that the entire amount expended by the taxpayer during the years involved, which is set out in the findings of fact, was an ordinary and necessary expense and the taxpayer is entitled to deduct the same in determining its net income.

> *Judgment for the petitioner. Order of re-determination will be entered on 10 days' notice, under Rule 50.*